IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEROME SCHMIDT | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | No. 1:18-cv-00088-LY |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant | § | |
| | § | |

**PLAINTIFF'S DESIGNATION OF TESTIFYING EXPERTS**

Plaintiff serves this designation of Retained Testifying Experts pursuant to Fed. R. Civ. P. 26(a)(2)(B) and the Court's Scheduling Order.

**I.   TESTIFYING EXPERTS**

Plaintiff designates the following retained expert witnesses to provide testimony in this case:

### A.   *Erin D. Bigler, PhD*

Areas of Expertise: Neuropsychology-Neurophysiology, Neuropsychological Diagnostics and Consultation, and Neuroimaging

Dr. Erin Bigler is board certified in clinical neuropsychology. He is the Susa Young Gates Professor of Psychology and Neuroscience. He is board certified by the American Board of Professional Psychology. For a more detailed summary of Dr. Bigler's skills,

1

training, education, experience, and knowledge, please see his *curriculum vitae*, which has been separately served on Defendant as **Exhibit 1** to this designation and is incorporated by reference into this designation. His CV also contains a list of his publications.

Dr. Bigler will testify to any neuropsychological and neuroimaging issues in this case. He will testify to any subject on which he has factual knowledge or is within his area of expertise. He will testify regarding any opinion or fact or issue raised by the Defendant, its employees, any of Defendant's witnesses, or any Defense expert within their area of expertise. His expected testimony will address causation and damages issues surrounding the facts that are the subject of this lawsuit and that are within his area of expertise. His opinions are based on a review of Dr. Schmidt's health care records, imaging studies, testimony taken and to be taken in this case, any specific literature he may have relied upon, and his education, training, and experience. He is also reviewed the examinations and conclusions of Dr. Lewine, Dr. Thoma, and Dr. Synder.

At this time, Plaintiff has no further knowledge of the mental impressions, opinions and facts known to this expert other than those contained in his report. For a more detailed discussion of his opinions and basis for those opinions, please see his report which is attached as **Exhibit 2** and which is incorporated by reference into this designation. He is available for deposition and Defendant may examine him for a more detailed explanation of his opinions and basis for those opinions relating to this case. Once he has given deposition or other testimony in this case, Plaintiff incorporates such testimony by reference into this designation.

Dr. Bigler's compensation is summarized on the attached fee schedule which is attached as **Exhibit 3** and is incorporated by reference into this designation. A list of cases Dr. Bigler has testified in by deposition or trial is attached as **Exhibit 4.**

Dr. Bigler reserves the right to use any exhibits previously produced by Plaintiff, any part or part of his expert report or cited literature, any exhibits that have or will be exchanged in discovery, and any documents that he brings with him to his deposition. Dr. Bigler is also extensively published in the neuropsychological and neuroimaging area (see CV) specifically related to patients with conditions similar to Dr. Schmidt. Dr. Bigler reserves the right to use his own publications as exhibits at trial or in response to testimony given by Defense experts.

### B.  *Jeffrey Lewine, MD*

Areas of Expertise: Neuroscience, Biophysics, Neuroimaging, Psychology

Dr. Jeffrey Lewine has a B.S., M.S., and Ph.D. in Neuroscience. He was a biophysics fellow at Los Alamos National Laboratory. He is an Adjunct Associate Professor of Neurology, University of New Mexico Health Sciences Center and an Adjunct Associate Professor of Psychology, University of New Mexico. He is a Professor of Translational Neuroscience at the Mind Research Network. He has numerous grants, clinical trials, honors, awards, publications, and presentations. For a more detailed summary of Dr. Lewine's skills, training, education, experience, and knowledge, please see his curriculum vitae, which has been separately served on Defendant as **Exhibit 5** to this designation and is incorporated by reference into this designation.

Dr. Lewine will testify to any neurological, neuroscience, biophysics, neuroimaging, or psychology issues in this case. He will testify to any subject on which he has factual knowledge or is within his area of expertise. He will testify regarding any opinion or fact or issue raised by the Defendant, its employees, any of Defendant's witnesses, or any Defense expert within their area of expertise. His expected testimony will address causation and damages issues surrounding the facts that are the subject of this lawsuit and that are within his area of expertise. Dr. Lewine's opinions are based on a review of Dr. Schmidt's health care records, examination of Dr. Schmidt, imaging studies, testimony taken and to be taken in this case, any specific literature he may have relied upon, and his education, training, and experience. At this time, Plaintiff has no further knowledge of the mental impressions, opinions and facts known to this expert other than those contained in his report. For a more detailed discussion of his opinions and bases for those opinions, please see his reports, which have been separately served on Defendant as **Exhibits 2 and 6-10** and which are incorporated by reference into this designation. He is available for deposition and Defendant may examine him for a more detailed explanation of his opinions and basis for those opinions relating to this case. Once he has given deposition or other testimony in this case, Plaintiff incorporates such testimony by reference into this designation.

Dr. Lewine charges $400 per hour for record review, data analysis, and report preparation, $600 per hour for deposition or trial testimony, $3000 for MRI/DTI testing, $6000 for MEG/EEG evaluations, $1000 for audiology/cognitive testing, and $3000 flat rate for Quantitative MRI Analysis. A list of cases Dr. Lewine's has testified in by deposition or trial is attached as **Exhibit 11.**

Dr. Lewine reserves the right to use any exhibits previously produced by Plaintiff, any part or part of his expert report or cited literature, any exhibits that have or will be exchanged in discovery, and any documents that he brings with him to his deposition. Dr. Lewine is also extensively published in matters related to his testimony in this case (see CV). Dr. Lewine reserves the right to use those publications in his testimony or in rebuttal of testimony offered by Defense witnesses.

### C.     *Robert J. Thoma, Ph.D.*

Area of Expertise: Neuropsychology and Neuroimaging

Dr. Robert Thoma has a M.S. and Ph.D. in clinical psychology. He is an Adjunct Professor with the Psychology Department of the University of New Mexico and an Associate Professor in the UNM School of Medicine, Department of Psychiatry, Center for Neuropsychological Services.  Dr. Thoma is also an associate research scientist at Mind Research Network in New Mexico and a research scientist with the University of New Mexico Psychiatry Research Program.  Dr. Thoma serves as a director of the CNS Professional Clinical Education Program and is a partner and clinical neuropsychologist at Sandia Neuropsychology.  He has numerous grants, clinical trials, honors, awards, publications, and presentations. For a more detailed summary of Dr. Thoma's skills, training, education, experience, and knowledge, please see his curriculum vitae, which has been separately served on Defendant as **Exhibit 12** to this designation and is incorporated by reference into this designation.

Dr. Thoma will testify to any neuropsychological and neuroimaging issues in this case. He will testify to any subject on which he has factual knowledge or is within his area

of expertise. He will testify regarding any opinion or fact or issue raised by the Defendant, its employees, any of Defendant's witnesses, or any Defense expert within his area of expertise. His expected testimony will address causation and damages issues surrounding the facts that are the subject of this lawsuit and that are within his area of expertise.

His opinions are based on an interview, evaluation, and physical examination of Dr. Schmidt and review of Dr. Schmidt's health care records, imaging studies, testimony taken and to be taken in this case, any specific literature he may have relied upon, and his education, training, and experience. He has also consulted the opinions of Dr. Levine, Dr. Bigler, and Dr. Snyder. At this time, Plaintiff has no further knowledge of the mental impressions, opinions and facts known to this expert other than those contained in his report. For a more detailed discussion of his opinions and bases for those opinions, please see his report which has been separately served on Defendant as **Exhibit 13** and which is incorporated by reference into this designation. He is available for deposition and Defendant may examine him for a more detailed explanation of his opinions and basis for those opinions relating to this case. Once he has given deposition or other testimony in this case, Plaintiff incorporates such testimony by reference into this designation.

Dr. Thoma provided deposition testimony in *Gloria Ortega-Romero vs. Comcast,* Cause of action 28:1441, New Mexico District Court.

Dr. Thoma charges $250/hour for consultation and data analysis, and $350/hour for preparation, deposition, and testimony. If travel of more than two hours is expected, Dr.Thoma bills an extra $250/hour, including expenses.

Dr. Thoma reserves the right to use any exhibits previously produced by Plaintiff, any part or part of his expert report or cited literature, any exhibits that have or will be exchanged in discovery, and any documents that he brings with him to his deposition.

**D.     *Travis Snyder, D.O.***

Area of Expertise: Radiology and Neuroradiology

Dr. Travis Snyder has psychology, biology, and chemistry degrees from Florida State University and a D.O. from Touro University Medical School. Dr. Snyder did his radiology residency at Michigan State University and was a neuroradiology fellow at University of Miami/Jackson Hospital. He maintains medical licenses in the Michigan, Florida, Nevada, Arizona, and California. Hs is a board-certified radiologist and a CAQ certified neuroradiologist.

Dr. Snyder currently serves as a neuroradiologist at SimonMed Radiology in Las Vegas. For a more detailed summary of Dr. Snyder's skills, training, education, experience, and knowledge, please see his curriculum vitae, which has been separately served on Defendant as **Exhibit 14** to this designation and is incorporated by reference into this designation.

Dr. Snyder will testify to any radiology and neuroradiology issues in this case. He will testify to any subject on which he has factual knowledge or is within his area of expertise. He will testify regarding any opinion or fact or issue raised by the Defendant, its employees, any of Defendant's witnesses, or any Defense expert within his area of expertise. His expected testimony will address causation and damages issues

surrounding the facts that are the subject of this lawsuit and that are within his area of expertise.

His opinions are based on a review of Dr. Schmidt's health care records, imaging studies, testimony taken and to be taken in this case, any specific literature he may have relied upon, and his education, training, and experience. He has also consulted the opinions of Dr. Levine, Dr. Bigler, and Dr. Thoma. At this time, Plaintiff has no further knowledge of the mental impressions, opinions and facts known to this expert other than those contained in his report. For a more detailed discussion of his opinions and bases for those opinions, please see his report which has been separately served on Defendant as **Exhibit 15** and which is incorporated by reference into this designation. He is available for deposition and Defendant may examine him for a more detailed explanation of his opinions and basis for those opinions relating to this case. Once he has given deposition or other testimony in this case, Plaintiff incorporates such testimony by reference into this designation.

A list of the cases he has testified either by deposition or trial has been separately served on Defendant as **Exhibit 16** and is incorporated by reference into this designation. Dr. Snyder charges $1000/day for on-site consultation, testimony preparation, and data analysis; $6000/day or $3000/half day for off-site consultation; and $6,000/day for deposition and trial testimony.

Dr. Snyder reserves the right to use any exhibits previously produced by Plaintiff, any part or part of his expert report or cited literature, any exhibits that have or will be exchanged in discovery, and any documents that he brings with him to his deposition.

### E.     *Christine Vidouria, D.O., CPLCP*

Area of Expertise: Life Care Planning, Physical Medicine and Rehabilitation

Dr. Christine Vidouria is a board-certified Physical Medicine & Rehabilitation, and Pain Medicine specialist who has practiced medicine in Texas since 2001. Dr. Vidouria is a licensed physician in the State of Texas and is a member of the American Board of Physical Medicine & Rehabilitation. She is also certified in Pain Medicine by the American Board of Anesthesiology as well as a Fellowship in Interventional Pain Management. Dr. Vidouria has served as Medical Director for HealthSouth Rehabilitation Institute of San Antonio and Pain Management Program and Methodist Specialty Transplant Hospital in the acute rehab unit.

Dr. Vidouria is also a Certified Life Care Planner, designated by the International Commission on Health Certification. Dr. Vidouria earned a Doctor of Osteopathic Medicine from The University of North Texas HSC—Fort Worth—Texas college of Osteopathic Medicine and a Bachelor of Science in Microbiology from the University of Texas—El Paso in El Paso, TX. Dr. Vidouria performed her residency at the University of Texas Health Science Center—San Antonio in Physical Medicine & Rehabilitations as well as a fellowship in Interventional Pain Management.

For a more detailed summary of Dr. Vidouria's skills, training, education, experience, and knowledge, please see her curriculum vitae, which has been separately served on Defendant as **Exhibit 17** to this designation and is incorporated by reference into this designation.

Dr. Vidouria will testify to any rehabilitation and life care planning issues in this case. She will testify to any subject on which she has factual knowledge or is within her

area of expertise. She will testify regarding any opinion or fact or issue raised by the Defendant, its employees, any of Defendant's witnesses, or any Defense expert within her area of expertise.

Her opinions are based on an interview, evaluation, and physical examination of Dr. Schmidt and review of Dr. Schmidt's health care records, testimony taken and to be taken in this case, any specific literature she may have relied upon, and her education, training, and experience. She has also consulted the opinions of Dr. Thoma, Dr. Levine, and Dr. Bigler. At this time, Plaintiff has no further knowledge of the mental impressions, opinions and facts known to this expert other than those contained in her report. For a more detailed discussion of her opinions and bases for those opinions, please see her reports which has been separately served on Defendant as **Exhibit 18** and which is incorporated by reference into this designation. She is available for deposition and Defendant may examine her for a more detailed explanation of her opinions and basis for those opinions relating to this case. Once she has given deposition or other testimony in this case, Plaintiff incorporates such testimony by reference into this designation.

A list of the cases she has testified either by deposition or trial has been separately served on Defendant as **Exhibit 19** and is incorporated by reference into this designation. Dr. Vidouria charges $600/hour for record review, $750/hour for medical examinations, and $3000 per half day of deposition.

Dr. Vidouria reserves the right to use any exhibits previously produced by Plaintiff, any part or part of her expert report or cited literature, any exhibits that have or will be exchanged in discovery, and any documents that she brings with her to her

deposition. Dr. Vidouria may rely on the following literature as well as any cited in her report:

- Almeida, O. P., Hankey, G. J., Yeap, B. B., Golledge, J., & Flicker, L. (2015). Prevalence, associated factors, mood and cognitive outcomes of traumatic brain injury in later life: the health in men study (HIMS). International journal of geriatric psychiatry, 30(12), 1215-1223.
- Bryant, R. A., O'donnell, M. L., Creamer, M., McFarlane, A. C., Clark, C. R., & Silove, D. (2010). The psychiatric sequelae of traumatic injury. American Journal of Psychiatry, 167(3), 312-320.
- Fann, J. R., Ribe, A. R., Pedersen, H. S., Fenger-Grøn, M., Christensen, J., Benros, M. E., & Vestergaard, M. (2018). Long-term risk of dementia among people with traumatic brain injury in Denmark: a population-based observational cohort study. The Lancet Psychiatry, 5(5), 424-431.
- Gardner, R. C., Byers, A. L., Barnes, D. E., Li, Y., Boscardin, J., & Yaffe, K. (2018). Mild TBI and risk of Parkinson disease: A Chronic Effects of Neurotrauma Consortium Study. Neurology, 10-1212.
- Heitger, M. H., Jones, R. D., Dalrymple-Alford, J. C., Frampton, C. M., Ardagh, M. W., & Anderson, T. J. (2006). Motor deficits and recovery during the first year following mild closed head injury. Brain injury, 20(8), 807-824.
- Jawaid, A., Rademakers, R., Kass, J. S., Kalkonde, Y., & Schulz, P. E. (2009). Traumatic brain injury may increase the risk for frontotemporal dementia through reduced progranulin. Neurodegenerative Diseases, 6(5-6), 219-220.
- Jorge, R. E., Robinson, R. G., Moser, D., Tateno, A., Crespo-Facorro, B., & Arndt, S. (2004). Major depression following traumatic brain injury. Archives of general psychiatry, 61(1), 42-50.
- Kushner, D. (1998). Mild traumatic brain injury: toward understanding manifestations and treatment. Archives of internal medicine, 158(15), 1617-1624.
- Lee, Y. K., Hou, S. W., Lee, C. C., Hsu, C. Y., Huang, Y. S., & Su, Y. C. (2013). Increased risk of dementia in patients with mild traumatic brain injury: a nationwide cohort study. PloS one, 8(5), e62422.
- Maguen, S., Lau, K. M., Madden, E., & Seal, K. (2012). Relationship of screen-based symptoms for mild traumatic brain injury and mental health problems in Iraq and Afghanistan veterans: Distinct or overlapping symptoms?. Journal of Rehabilitation Research & Development, 49(7).
- Makley, M. J., English, J. B., Drubach, D. A., Kreuz, A. J., Celnik, P. A., & Tarwater, P. M. (2008). Prevalence of sleep disturbance in closed head injury patients in a rehabilitation unit. Neurorehabilitation and neural repair, 22(4), 341-347;
- Mantua, J., Henry, O. S., Garskovas, N. F., & Spencer, R. (2017). Mild traumatic brain injury chronically impairs sleep-and wake-dependent emotional processing. Sleep, 40(6).

- Oleksiak, M., Smith, B. M., Andre, J. R. S., Caughlan, C. M., & Steiner, M. (2012). Audiological issues and hearing loss among Veterans with mild traumatic brain injury. Journal of Rehabilitation Research & Development, 49(7).
- Orlovska, S., Pedersen, M. S., Benros, M. E., Mortensen, P. B., Agerbo, E., & Nordentoft, M. (2014). Head injury as risk factor for psychiatric disorders: a nationwide register-based follow-up study of 113,906 persons with head injury. American journal of psychiatry, 171(4), 463-469.
- Pogoda, T. K., Hendricks, A. M., Iverson, K. M., Stolzmann, K. L., Krengel, M. H., Baker, E., & Lew, H. L. (2012). Multisensory impairment reported by veterans with and without mild traumatic brain injury history. Journal of Rehabilitation Research & Development, 49(7).
- Ponsford, J. L., Parcell, D. L., Sinclair, K. L., Roper, M., & Rajaratnam, S. M. (2013). Changes in sleep patterns following traumatic brain injury: a controlled study. Neurorehabilitation and neural repair, 27(7), 613-621.
- Ponsford, J. L., Ziino, C., Parcell, D. L., Shekleton, J. A., Roper, M., Redman, J. R., & Rajaratnam, S. M. (2012). Fatigue and sleep disturbance following traumatic brain injury—their nature, causes, and potential treatments. The Journal of head trauma rehabilitation, 27(3), 224-233.
- Silver, J. M., McAllister, T. W., & Arciniegas, D. B. (2009). Depression and cognitive complaints following mild traumatic brain injury. American Journal of Psychiatry, 166(6), 653-661.
- Vanderploeg, Rodney D., Heather G. Belanger, and Glenn Curtiss. "Mild traumatic brain injury and posttraumatic stress disorder and their associations with health symptoms." Archives of physical medicine and rehabilitation 90.7 (2009): 1084-1093.
- Verma, A., Anand, V., & Verma, N. P. (2007). Sleep disorders in chronic traumatic brain injury. Journal of Clinical Sleep Medicine, 3(04), 357-362;

F.    *John A. Swiger, Ph.D.*

Areas of Expertise: Economics and Finance

Dr. John Swiger is an expert in economic and financial analysis. He received his doctoral degree in finance from the University of North Carolina at Chapel Hill. Dr. Swiger is a Professor Emeritus of Finance at Our Lady of the Lake University. For a more detailed summary of Dr. Swiger's skills, training, education, experience, and knowledge, please see his curriculum vitae that is attached as **Exhibit 20** to this designation and is incorporated by reference into this designation. Dr. Swiger will testify as to any economic

or financial in this case. He will testify as to any subject on which he has factual knowledge or is within his area of expertise. He will testify regarding any opinion or fact or issue raised by the Defendant, its employees, any of Defendant's witnesses, or any Defense expert within his area of expertise. His expected testimony will address damage issues surrounding the facts that are the subject of this lawsuit. His opinions are based on a review of testimony taken and to be taken in this case, a list of documents described in his expert report, any specific literature he may have relied upon, and his education, training, skills, knowledge and experience including the documents attached to Dr. Swiger's report. Dr. Swiger has reviewed the report of Dr. Vidouria.

At this time, Plaintiff has no further knowledge of the mental impressions, opinions and facts known to this expert other than those contained in his report. For a more detailed discussion of his opinions and bases for those opinions, please see his report, which is attached as **Exhibit 21** and which is incorporated by reference into this designation. He is available for deposition and Defendant may examine him for a more detailed explanation of his opinions and basis for those opinions relating to this case. Once he has given deposition or other testimony in this case, Plaintiff incorporates such testimony by reference into this designation.

A list of the cases Dr. Swiger has testified either by deposition or trial is attached as **Exhibit 22** which also includes a summary of his fee schedule and is incorporated by reference into this designation.

Dr. Swiger reserves the right to use any exhibits previously produced by Plaintiff, any part or part of his expert report or cited literature, any exhibits that have or will be

exchanged in discovery, and any documents that he brings with him to his deposition. Dr. Swiger also reserves the right to use summary tables to describe his opinions.

## II. NON-RETAINED EXPERTS

Plaintiff designates all non-retained treaters identified in Plaintiff's initial disclosures, and supplements to and Exhibit 1 to the initial disclosures and supplements (Designation of Persons with Knowledge of Relevant Facts.) In this case, Dr. Schmidt's treating professionals, including Dr. Michael Webb, Dr. Wayne Dees, and Mr. John Cooper, have provided letters detailing some of their opinions related to Dr. Schmidt's care. These letters and the medical records have been previously produced to the United States. Plaintiff incorporates those lists by reference herein. Plaintiff also reserves the right to use the deposition testimony or call live these treating doctors, in the control of the Defendant. Plaintiff also cross designates any experts designated by the United States for the limited purpose of reserving the right to elicit favorable admissions at trial, either by deposition or in person. At this point, however, Plaintiff does not possess any other information regarding their mental impressions.

## III. OTHER WITNESSES & EXHIBITS

For a designation of potential witnesses and proposed exhibits, please see Plaintiff's Initial Disclosures, and Exhibit 1 of Initial Disclosures, and any supplements to the Initial Disclosures and Exhibit 1. Plaintiff incorporates those documents into this document by reference.

Respectfully Submitted,

/s/ Jamal Alsaffar
JAMAL K. ALSAFFAR
jalsaffar@nationaltriallaw.com
Texas State Bar #24027193
TOM JACOB
tjacob@nationaltriallaw.com
Texas State Bar #24069981
Whitehurst, Harkness, Brees, Cheng,
Alsaffar, Higginbotham, & Jacob PLLC
7500 Rialto Blvd, Bldg Two, Ste 250
Austin, TX 78735
(512) 476-4346 (o)
(512) 467-4400 (f)

HENRY MOORE
henry@moorelegal.net
Texas State Bar #14341500
Law Offices of Henry Moore
1101 E. 11th St.
Austin, Texas 78702-1908
(512) 477-1663 (o)
(512) 476-6212 (f)

Attorneys for the Plaintiff

## CERTIFICATE OF SERVICE

By my signature above, I certify that a copy of this pleading has been sent to the following on July 16, 2018 via email and USPS.

JAMES F. GILLIGAN
jim.gilligan@usdoj.gov
Assistant United States Attorney
Texas State Bar # 07941200
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216-5597
Tel. (210) 384-7345
Fax (210) 384-7312
