IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEROME SCHMIDT, | § § | |
| *Plaintiff,* | § § § | A-18-CV-00088-DAE |
| vs. | § § | |
| UNITED STATES OF AMERICA, | § § § | |
| *Defendant.* | § § | |

**ORDER**

  Before the Court in the above-styled cause of action are Plaintiff's Motion to Exclude Testimony of Defendant's Expert Kyle B. Boone [#44], Defendant United States of America's Second Amended Response to Plaintiff's Motion to Exclude Testimony of Defendant's Expert Kyle Boone, Ph.D. [#47], and Plaintiff's Reply to Defendant's Second Amended Response [#53]. Plaintiff's motion was referred to the undersigned on April 12, 2019 for disposition pursuant to Federal Rule of Civil Procedure 72 and Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#58]. The undersigned has authority to enter this order pursuant to 28 U.S.C. § 636(b)(1)(A).

  The Court held a hearing on the motion on May 3, 2019, at which both parties were present through counsel. Having considered the motion, response, reply, the record before the Court, the arguments of counsel at the hearing, and the governing law, the Court will deny the motion without prejudice to Plaintiff reasserting the arguments raised therein before the District Court.

1

## I. Relevant Background

This is a case involving a motor-vehicle collision between Plaintiff Jerome Schmidt and Edward R. Saylor, a United States Marine, who Plaintiff alleges was acting in the course and scope of his employment with the United States Navy at the time of the accident. (Compl. [#1] at ¶¶ 5.1–5.17.) Plaintiff originally filed this action against Defendant the United States of America in the Austin Division of the Western District of Texas, alleging that Defendant, through the acts of its employee, was negligent in causing Plaintiff's injuries in violation of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674. The case was transferred to the San Antonio Division on February 15, 2019 due to a conflict of interest [#38].

Plaintiff, a licensed psychologist formerly in private practice, alleges he suffered a closed-head traumatic brain injury from the head-on collision, although he did not lose consciousness or seek emergency medical care at the time of the accident. (Compl. [#1] at ¶¶ 5.11, 5.13.) As a result of the head injury, Plaintiff claims he has suffered ongoing short-term memory loss and confusion, resulting in the inability to concentrate, retrieve words, and remember names. (*Id.* at ¶ 5.12.) Plaintiff's treating neuropsychologist, Dr. Wayne Dees, and psychologist, Dr. Amy Duckwall, have both diagnosed him with a neurocognitive disorder, and neuropsychological testing by Plaintiff's doctors concluded that Plaintiff has delayed visual design memory and word reading speed, as well as problems with complex visual construction, fine motor dexterity on his left side, visual memory issues, and long-term verbal memory problems. (*Id.* at ¶ 5.12.) Due to these issues, Plaintiff alleges he had no choice but to close his private practice. (*Id.* at ¶ 5.13.) Plaintiff claims the injury has also exacerbated his preexisting anxiety and depression. (*Id.* at ¶ 5.14.) Plaintiff seeks damages in the form of past and future

mental anguish, past and future emotional distress, and past and future loss of income and impairment of earning capacity.  (*Id.* at ¶ 7.1.)

Trial in this case will be to the bench, as there is no right to a jury trial in FTCA cases.  *See* 28 U.S.C. § 2402; *Carlson v. Green*, 446 U.S. 14, 22 (1980).  Plaintiff has designated Dr. Erin D. Bigler, a board-certified clinical neuropsychologist; Dr. Jeffrey Lewine, an expert in neurology and neuroscience; Dr. Robert J. Thoma, a clinical psychologist; and Dr. Travis Snyder, an expert in radiology and neuroradiology, to testify on issues related to Plaintiff's neurological injuries [#11, #31].  In response, Defendant has designated Dr. Kyle Brauer Boone, Dr. Julio A. Chalela, and Dr. Christopher M. Loftus as experts, all of whom have expertise in fields relevant to Plaintiff's alleged injuries [#13].  Plaintiff now moves to exclude Dr. Boone from testifying as an expert in this case on the basis that her opinions are not reliable under the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993) and Rule 702 of the Federal Rules of Evidence.

## II.  Legal Standard

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the Supreme Court held that trial judges must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.  Subsequent to *Daubert*, Rule 702 of the Federal Rules of Evidence was amended to provide that a witness "qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  *See Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting FED. R. EVID. 702).  The Rule 702 and *Daubert* analysis applies to all proposed expert testimony, including nonscientific "technical analysis"

and other "specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). The overarching focus of a *Daubert* inquiry is the "validity and thus evidentiary relevance and reliability of the principles that underlie a proposed submission." *Watkins*, 121 F.3d at 989 (quoting *Daubert*, 509 U.S. at 594–96). Because the *Daubert* test focuses on the underlying theory upon which the opinion is based, the proponent of expert testimony need not prove the expert's testimony is correct, but rather that the testimony is reliable. *Moore*, 151 F.3d at 276. This determination of reliability includes a preliminary determination of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93.

Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Adv. Comm. Notes (2000). *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The need for a gatekeeper is substantially less in a bench trial, where the judge serves as both factfinder and evaluator of the the evidence's reliability. *See*

*Williams v. Illinois*, 567 U.S. 50, 69 (2012) ("When the judge sits as the trier of fact, it is presumed that the judge will understand the limited reason for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose."); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) (finding the standards announced in *Daubert* "are not as essential in a case . . . where a district judge sits as the trier of fact in place of a jury").

### III.  Analysis

Dr. Boone should be permitted to testify, but Plaintiff has identified aspects of her testimony that are questionable in terms of reliability.  Given that this is a bench trial, Plaintiff's motion to exclude is denied, but the denial is without prejudice to Plaintiff objecting during trial and arguing that all or a portion of Dr. Boone's testimony should be disregarded in its entirety as unreliable rather than merely given minimal weight.  This approach makes the most sense because of the context-specific nature of Plaintiff's reliability objections and the fact that this is a bench trial.

Dr. Boone, a licensed psychologist, intends to provide expert testimony at trial on the cognitive deficits and neuropsychological symptoms Plaintiff claims are attributable to the accident underlying this case.  (Boone C.V. [#47-1]; Boone Expert Report [#47-3].)  Dr. Boone's expert report reaches the following conclusions: (1) there is no evidence that Plaintiff sustained a brain injury during the motor-vehicle accident at issue, and even if he had sustained a concussion, he would have no cognitive or psychiatric residuals from that event; (2) none of the neuropsychological exams of Plaintiff adequately checked for performance validity (i.e., confirmed that Plaintiff was in fact performing to true ability) and therefore cannot be used as evidence of cognitive dysfunction; (3) even if Plaintiff does have some mild cognitive inefficiency, his sleep apnea, depression, hypertension, elevated cholesterol, lowered

testosterone, vitamin B12 deficiency, small vessel vascular disease, chronic prescribed sleep medication use, and possible attention deficit disorder would more likely account for Plaintiff's symptoms; and (4) appropriate personality testing was not conducted that would have accurately assessed levels of depression, anxiety, PTSD, and other conditions such as somatoform disorder, a condition in which the individual channels stress into physical symptoms and magnifies the seriousness of minor symptoms, and Plaintiff's symptoms are consistent with this disorder. (Boone Expert Report [#47-3] at 17–18.)  In other words, Dr. Boone intends to testify that Plaintiff does not have a brain injury and is overstating and exaggerating his symptoms.

Plaintiff does not challenge Dr. Boone's qualifications as an expert or the relevance of her testimony to the issue of Plaintiff's claimed injuries and damages.[1]  Rather, Plaintiff maintains that Dr. Boone's testimony is not reliable because she failed to examine or perform neuropsychological testing on Plaintiff before rendering her opinions; she failed to review the raw test data from the three neuropsychological tests that were performed on Plaintiff by other doctors; her methodology is litigation-oriented rather than based on clinical practice; and her conclusions are not supported by a reasonable degree of medical certainty.

*Daubert* sets forth four specific factors that the trial court should ordinarily apply when considering the reliability of scientific evidence: (1) whether the technique can or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a

---

[1] However, Plaintiff argued at the hearing that one aspect of the unreliability of Dr. Boone's testimony on the lack of a brain injury is her lack of qualification to read MRI or CT scans.  The Court construes this as a challenge to the reliability of Dr. Boone's testimony rather than a challenge to whether she is qualified to testify as an expert on Plaintiff's neuropsychological symptoms generally.  Dr. Boone is generally qualified to testify as an expert in the area of neuropsychology.  She is a Clinical Professor in the Department of Psychiatry and Behavioral Sciences at UCLA, a licensed psychologist in the State of California, holds a Diplomate in Clinical Neuropsychology, and is a Fellow of the American Psychological Association and the National Academy of Neuropsychology. (Boone C.V. [#47-1].)

known or potential rate of error; and (4) whether the relevant scientific community generally accepts the technique. *Daubert*, 509 U.S. at 592–93. This test of reliability, however, is "flexible," and these factors "neither necessarily nor exclusively apply to all experts or in every case." *Kumho Tire Co.*, 526 U.S. at 141. "Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142. Again, "[t]he proponent need not prove that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore*, 151 F.3d at 276.

Dr. Boone's expert report and deposition indicate that she based her testimony exclusively on her review of Plaintiff's medical records, the results of the neuropsychological examinations by Plaintiff's doctors, the reports of Plaintiff's designated experts, and Plaintiff's deposition testimony. (Boone Expert Report [#47-3] at 1; Boone Dep. [#44-1] at 28–29.) Dr. Boone concedes she neither evaluated Plaintiff nor reviewed the raw data underlying Plaintiff's neuropsychological exams. (Boone Dep. [#44-1] at 30, 42.)

Although Dr. Boone testified in her deposition that in most cases she normally performs an examination of the plaintiff in brain-injury cases (Boone Dep. [#44-1] at 41), there is nothing in the evidence before the Court suggesting that the failure to do so renders an expert psychologist's methodology inherently flawed such that her opinion is *per se* unreliable or such that her opinion is wholly unhelpful to the jury. The American Psychological Association's ("APA") Ethical Principles of Psychologists and Code of Conduct provides that in some cases psychologists will merely conduct a record review before providing opinions on the psychological characteristics of individuals due to the impracticality of the examination or when an examination is not necessary or warranted. (APA Code of Ethics [#47-2] at 13.) In such

circumstances, psychologists should explain the source of information on which they based their conclusions and recommendations and acknowledge its limitations. (*Id.*)  The general rule is nonetheless that psychologists should "provide opinions of the psychological characteristics of individuals only after they have conducted an examination adequate to support their statements or conclusions."  (*Id.*)  The APA recognizes that a failure to personally examine an individual will have a "probable impact" on the "reliability and validity of [a psychologist's] opinions." (*Id.*)

Were this a jury trial, the Court would have greater concern regarding the reliability of Dr. Boone's testimony in light of her failure to examine Plaintiff.  However, this case will not be tried to a jury, where the risk of prejudice flowing from unreliable testimony is greatest.  In the context of a bench trial, as here, the Court's inquiry into reliability is less stringent than in the context of a jury trial, as many of the "[s]afeguards such as those provided for in Rules 701 and 702 and discussed in *Daubert* are largely irrelevant in the context of a bench trial."  *Air Evac EMS, Inc. v. Sullivan*, 331 F. Supp. 3d 650, 657 (W.D. Tex. 2018) (citing *Williams*, 567 U.S. at 69).  In this context, the fact that Dr. Boone failed to perform her own neuropsychological testing or personally examine Plaintiff does not render her opinions inadmissible due to lack of reliability, but it makes her opinions inevitably less persuasive than the opinions of the experts who have examined Plaintiff and easy fodder for cross examination.

Nor is the Court persuaded that Dr. Boone should be excluded as an expert in a bench trial due to her failure to review the raw data underlying Plaintiff's doctors' conclusions from their neuropsychological exams.  Again, this issue with her testimony will be appropriately addressed through cross examination, in which Defendant can highlight that Plaintiff does not in fact know what the raw data contains, again diminishing the persuasiveness of her opinions as

compared to the opinions of the experts who examined Plaintiff. The District Court is equipped to hear Dr. Boone's opinions and assess their reliability, relevance, and weight in ways that a jury cannot.

As to the argument that Dr. Boone's testimony is not supported by a reasonable degree of medical certainty, the Court reiterates what it conveyed at the hearing on Plaintiff's motion. Dr. Boone conceded in her deposition that she could not "conclude within a reasonable degree of medical certainty whether or not Dr. Schmidt is a malingerer." (Boone Dep. [#44-1] at 143.) But Dr. Boone does not intend to testify that it is her medical opinion that Plaintiff does have somatoform disorder or some other condition causing Plaintiff to exaggerate or lie about his symptoms. Nor could she, as she has conceded that she could not reach such a conclusion with a reasonable degree of medical certainty. Notably, Defendant does not have the burden to prove Plaintiff has any condition to a degree of medical certainty, and Defendant is not calling Dr. Boone to testify that Plaintiff has somatoform disorder. On the other hand, Plaintiff bears the burden to prove his claimed damages and that they were caused or exacerbated by the motor-vehicle collision at issue in this lawsuit. Plaintiff is attempting to do so by proffering expert testimony that Plaintiff sustained a traumatic brain injury as a result of the collision. Defendant offers Dr. Boone's testimony to rebut Plaintiff's damages model through Dr. Boone's testimony regarding other likely causes of Plaintiff's symptoms and the extent to which Plaintiff's experts have adequately accounted for these alternative explanations in reaching their diagnoses of Plaintiff.

Plaintiff argued at the hearing on Plaintiff's motion that experts are not permitted under *Daubert* to testify to mere possible causes of an individual's symptoms or condition. Plaintiff directed the Court to two opinions to illustrate this principle, but neither case was in the context

9

of a *Daubert* motion or instructive here. *See Shevak v. United States*, 528 F. Supp. 427, 432 (N.D. Tex. 1981) (ordering judgment for defendant due to plaintiff's failure to establish proximate cause, an essential element of his medical malpractice claim, because his evidence was too speculative); *Lee v. United States*, No. SA-08-CA-531-OG, 2010 WL 11452182, at *3 (W.D. Tex. Feb. 8, 2010) (denying plaintiff's motion in limine to exclude evidence on "possible" causation theories due to vagueness of the challenge, noting that deadline for challenging any expert under Rule 702 had expired, and commenting in dicta that "expert opinions that are grounded in mere possibilities will not be enough"). Experts testify on causation probabilities all the time, so long as their testimony is grounded in scientific literature, reliably applied to the facts of the case under Rule 702 and *Daubert*, and is helpful to the jury. *Cf. Vargas v. Lee*, 317 F.3d 498, 502 (5th Cir. 2003) (excluding expert testimony that fibromyalgia is caused by trauma due to lack of scientific support for conclusion). *See also Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury.").

Dr. Boone's expert report relies on several studies published in the scientific literature in her field concluding that concussions do not cause long-term cognitive or psychiatric impairments and that other conditions, such as depression, reduced sleep, and regular use of ambien have been documented to lead to mild cognitive impairments of the type documented in Plaintiff's medical records. (Boone Expert Report [#47-3] at 3, 5.) Dr. Boone intends to testify that these other conditions are more likely the cause of Plaintiff's symptoms than a traumatic brain injury. This testimony is based not only on the causation possibilities generally set forth in the scientific literature regarding cognitive impairments but also on a number of identified deficiencies in the administration of the neuropsychological examinations performed by

10

Plaintiff's doctors that make their diagnoses less reliable and the lack of any objective evidence of brain injury in Plaintiff's medical records. Dr. Boone's expert report details the performance validity tests and personality tests she argues should have been administered during the neuropsychological exams to ensure Plaintiff was in fact performing to true ability and was not malingering or exaggerating symptoms.[2] (*Id.* at 2–3.) Additionally, Dr. Boone based her opinions on the lack of any loss of consciousness following the accident or any record of brain imaging abnormalities that would provide additional support of a diagnosis of traumatic brain injury. (*Id.* at 3.) Again, under the Court's less stringent threshold reliability inquiry in the context of a bench trial, the Court will not exclude this proposed testimony at this time.

Finally, the Court will not exclude Dr. Boone from testifying in this case due to the fact that she no longer maintains a private clinical practice and primarily focuses her work on defense-related expert testimony. Defendant may cross examine Dr. Boone on her current practice, her possible bias for the defense, and her financial motivation for providing her expert testimony.

In summary, there are concerns about the reliability of certain aspects of Dr. Boone's testimony. However, in the context of a bench trial, the trial judge is in a unique position to hear

---

[2] At the hearing on Plaintiff's motion, Plaintiff argued the Court should exclude Dr. Boone's testimony based on the high error rate with respect to these performance validity tests. *See Daubert*, 509 U.S. at 592–93 (listing error rate as one factor in the reliability analysis). In support, Plaintiff submitted an excerpt from Dr. Boone's deposition as Exhibit 1 at the hearing. (Boone Dep. [Ex. 1] at 218–19). In this testimony, Dr. Boone merely testified that research has demonstrates that approximately 40 percent of plaintiffs in litigation exaggerate their symptoms but that the test does not detect all exaggerators. Plaintiff argues that Dr. Boone's concession as to the high error rate of these tests renders unreliable her testimony criticizing Plaintiff's experts for their failure to administer the tests. But Dr. Boone intends to testify that, based on her knowledge and experience in the field, such tests generally are performed, and the fact that they were not performed here raises questions as to the reliability of Plaintiff's experts' testimony. Plaintiff can cross-examine the witness regarding the necessity or appropriateness of using these tests.

the evidence and decide whether to disregard it altogether or to just consider the criticisms of the testimony as relevant to the weight the evidence is ultimately given.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Exclude Testimony of Defendant's Expert Kyle B. Boone [#44] is **DENIED WITHOUT PREJUDICE**. Dr. Boone may testify as an expert witness at the bench trial before the District Court as designated by Defendant in this case and Plaintiff may reassert any of the arguments raised in his motion before the District Court during the bench trial.

SIGNED this 10th day of May, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE